1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11

NHIA KAO VANG, et al.,

No.  2:12-cv-01226-MCE-EFB

12

Plaintiffs,

13

v.

**MEMORANDUM AND ORDER**

14

STEVEN DECKER, et al.,

15

Defendants.

16

17

        Through this action, Plaintiffs Nhia Kao Vang, Chao Xiong, David Vang, Chong

18

Yang, Chue Hue Vang, and Pang Her (collectively, "Plaintiffs") allege violations of

19

federal law arising out of the 2007 criminal investigation and prosecution of Plaintiffs

20

Chue Hue Vang, Nhia Kao Vang and David Vang (collectively, "the Vang Plaintiffs") for

21

an alleged plot to obtain military weapons to overthrow the government of Laos.

22

Plaintiffs allege violations of the First, Fifth and Fourteenth Amendments pursuant to

23

42 U.S.C. § 1983 and Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

24

Plaintiffs also allege state law tort claims for malicious prosecution, wrongful arrest,

25

wrongful imprisonment and intentional infliction of emotional distress.[1]

26

_____

27

        [1] Although Plaintiffs do not specifically bring suit under the Federal Tort Claims Act ("FTCA"),
28 U.S.C. §§ 2671-2680, the FTCA is Plaintiffs' only potential route for their claims to defeat sovereign
immunity.  28 U.S.C. § 2679.  The Court therefore construes Plaintiffs' claims as being brought under the
FTCA.

28

1

1 | Finally, Plaintiffs request declaratory and injunctive relief.  On July 31, 2012, Defendants

2 | Jones and the United States' (collectively, "Defendants") moved to dismiss Plaintiffs'

3 | Complaint for failure to state a claim upon which relief can be granted, pursuant to

4 | Federal Rule of Civil Procedure 12(b)(6).[2]  (ECF No. 9.)  Defendants also moved to

5 | dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

6 | Defendant Steven Decker, a special agent of the Bureau of Alcohol, Tobacco, Firearms,

7 | and Explosives who was sued in his individual capacity, has not been served pursuant to

8 | Rule 4, and therefore does not join the present motion.  On August 22, 2012, Plaintiffs

9 | filed a timely reply.  (ECF No. 13.)  For the reasons set forth below, Defendants' Motion

10 | to Dismiss is GRANTED.[3]

11 |

12 | **BACKGROUND[4]**

13 |

14 | Plaintiffs are three Hmong couples residing in West Sacramento and Fresno,

15 | California.  Plaintiffs contend that the Hmong people who remain in Laos are subject to a

16 | genocide carried out by the Laotian government.  Plaintiffs further contend that the

17 | United States, which called on the Hmong people to fight on its behalf against

18 | pro-communist forced during the Vietnam War, has failed to aid the Hmong people in

19 | their plight in Laos.  Plaintiffs were involved in efforts to bring about a peaceful solution

20 | to the Hmong genocide in Laos.

21 | Plaintiff Chue Hue Vang served as secretary to an individual identified as General

22 | Vang Pao and was interested in producing a documentary film concerning the Hmong

23 | plight, as well as interested in raising money and increasing the overall support for aiding

24 | the Hmong people in Laos.

---

25 | [2] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless
26 | otherwise noted.

27 | [3] Because oral argument will not be of material assistance, the Court orders this matter submitted
on the briefs.  E.D. Cal. Local Rule 78-230(h).

28 | [4] Unless otherwise stated, the following facts are derived from Plaintiffs' Complaint.  (ECF No. 2.)

1   Plaintiff Chue Hue Vang was told by an individual named Locha Thao that a meeting to

2   discuss documentary film production was going to be held in Sacramento.  Locha Thao

3   received this information from Defendant Decker.  On February 7, 2007, Plaintiff Chue

4   Hue Vang met at a Sacramento restaurant with other Hmong elders and Defendant

5   Decker.  At the meeting, the group gave Defendant Decker maps that they had created,

6   which showed the locations of Hmong people trapped in the jungles of Laos.  Plaintiff

7   Chue Hue Vang primarily served as an interpreter at the meeting.  Defendant Decker

8   later asked the group to follow him across the street to a mobile trailer where weapons of

9   various kinds were on display.  Plaintiff Chue Hue Vang understood the meeting and the

10  display of weapons to mean that the United States was interested in assisting the

11  Hmong people in escaping from Laos.  At no time during this meeting was there any

12  discussion, plan, or agreement regarding a military takeover of Laos, nor did Plaintiff

13  Chue Hue Vang make any agreement regarding the purchase, possession, or

14  transportation of weapons.

15       Plaintiff Chue Hue Vang attended a second meeting on February 18, 2007, where

16  a documentary film was discussed.  After the meeting, Plaintiff Chue Hue Vang was

17  invited to go to a new location at the Doubletree Hotel in Sacramento.  He understood

18  the meeting at the hotel to be connected to the documentary film project.  However, at

19  the hotel, Defendant Decker showed Plaintiff Chue Hue Vang and other Hmong elders

20  several AK 47s.  Defendant Decker led a discussion about a military-backed effort to

21  save the trapped Hmong people in Laos.  Plaintiff Chue Hue Vang was confused by the

22  conversation, as he knew that General Vang Pao did not have the money to fund the

23  type of effort Defendant Decker was discussing.  According to Plaintiffs, the discussion

24  focused on using weapons as a means to help the Hmong people in Laos defend

25  themselves and escape; an overthrow of the Laotian government was never mentioned.

26  Again, Plaintiff Chue Hue Vang inferred that the United States supported this plan.

27  ///

28  ///

1    Plaintiff Nhia Kao Vang was also asked to attend a meeting to discuss helping the

2    Hmong people in Laos.  He was asked to attend the meeting "with an American

3    government person," and was asked to drive a Hmong doctor to the meeting.  The group

4    went to a hotel where Defendant Decker showed Plaintiff Nhia Kao Vang and others a

5    display of weapons.  At no point was a military takeover of Laos discussed.  Plaintiff Nhia

6    Kao Vang was also asked to go on a trip to Washington, D.C.  He agreed to go on the

7    trip, with six other individuals.  Plaintiffs allege that this trip was simply for tourism and

8    "had nothing to do with any kind of fundraising effort" as Defendant Decker later claimed.

9    Plaintiff David Vang was told by Locha Thao to prepare a document called "the

10   Popcorn document."  Defendant Decker told Locha Thao to ask Plaintiff David Vang to

11   do so.  The Popcorn document detailed a plan for a military coup of Laos.  Locha Thao

12   also told Plaintiff David Vang that Defendant Decker had stated that the United States

13   not only supported the coup described in the Popcorn document but was going to fund

14   the operation and provide arms and special forces for it.  Plaintiff David Vang was also

15   told that the United States would pay him $5000 for preparing the document.  Plaintiff

16   David Vang thus prepared the Popcorn document with the understanding that the

17   operation detailed therein was a government-backed military operation.

18   The Criminal Case[5]

19   As a result of the above listed facts, a criminal complaint was filed before this

20   Court on June 4, 2007, charging the Vang Plaintiffs, among others, with conspiracy to

21   violate the Neutrality Act and conspiracy to receive and possess missiles, among other

22   things.  Plaintiffs allege that Defendant Decker intentionally deceived the grand jury, as

23   Defendant Decker knew that the Vang Plaintiffs did not have any criminal intent to enter

24   into an illegal conspiracy to overthrow the Laotian government, or to possess military

25   equipment unlawfully.  (ECF No. 2 at 10.)

26   _____
         [5] The facts regarding the criminal case against the Vang Plaintiffs are taken from reference to the
27   docket in that case unless otherwise stated.  (ECF No. 10-1).  The Court may consider documents
     referenced in a complaint, or which a complaint in some way depends on, in a motion to dismiss without
28   converting the motion to dismiss into a motion for summary judgment.  Knievel v. ESPN, 393 F.3d 1068,
     1076 (9th Cir. 2005).

1    Arrest warrants were returned executed on June 4, 2007, for Plaintiff Chue Hue

2    Vang, and on June 5, 2007, for Nhia Kao Vang.  An arrest warrant was returned

3    executed on June 14, 2007, for Plaintiff David Vang.  On June 14, 2007, the Vang

4    Plaintiffs were charged with numerous counts arising from the alleged conspiracy to

5    overthrow the government of Laos.  Plaintiffs were held in custody until they were

6    released on bond on July 13, 2007.

7    On March 9, 2009, the Vang Plaintiffs, among others, filed a Motion to Dismiss for

8    Outrageous Government Conduct.  Plaintiffs alleged that both the undercover agents

9    and the prosecutors engaged in misconduct throughout the prosecution and the

10   underlying investigation.  (ECF No. 10-3.)  The Court denied the motion on May 11,

11   2009, but provided that Plaintiffs could renew the motion after further discovery.

12   Ultimately, a Second Superseding Indictment was returned on June 24, 2010.

13   Plaintiffs filed numerous motions to dismiss, including a renewed Motion to Dismiss for

14   Outrageous Government Conduct.  On November 12, 2010, the Court granted in part

15   and denied in part Plaintiffs' motion to dismiss Counts One, Three, Four, and Five.  The

16   Court dismissed Counts Four and Five on the grounds that the Second Superseding

17   Indictment "fail[ed] to put each defendant on notice of the nature of charges against him

18   in order to allow him to prepare a defense or to ensure he is being prosecuted on the

19   basis of the facts presented to the grand jury" and "fail[ed] to apprise each defendant of

20   the specific conduct he engaged in the allegedly violates the [Neutrality] Act."  (ECF

21   No. 10-6.)

22   Subsequently, on January 10, 2011, the government moved to dismiss all

23   charges against the Vang Plaintiffs "in the interests of justice."  (ECF No. 10-8.)  The

24   Court granted the motion that same day.

25   <u>Administrative Claims</u>

26   On July 12, 2011, Plaintiffs Nhia Kao Vang, Chao Xiong, David Vang, and Chong

27   Yang served FTCA claims on the United States.  On July 29, 2011, Plaintiffs Chue Hue

28   Vang and Pang Her served their FTCA claims on the United States.

1   On July 18, 2011, and August 11, 2011, respectively, the Government acknowledged

2   receipt of the claims.  More than six months have passed since the submission of

3   Plaintiffs' FTCA claims, and the government has neither accepted nor denied the claims.

4

5                                   **STANDARDS**

6

7       **A.      Standard under Rule 12(b)(6)**

8

9          On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all

10  allegations of material fact must be accepted as true and construed in the light most

11  favorable to the non-moving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38

12  (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim

13  showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice

14  of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v.

15  Twombly, 550 U.S. 544, 555 (1997) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

16  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed

17  factual allegations.  Id.  However, "a plaintiff's obligations to provide the grounds of his

18  entitlement to relief requires more than labels and conclusions, and a formulaic recitation

19  of the elements of a cause of action will not do."  Id.  (internal citations and quotations

20  omitted).  A court is not required to accept as true a "legal conclusion couched as a

21  factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,

22  550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the

23  speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R.

24  Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading

25  must contain something more than a "statement of facts that merely creates a suspicion

26  [of] a legally cognizable right of action.")).

27  ///

28  ///

                                        6

1    Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket

2    assertion, of entitlement to relief." Twombly, 550 U.S. at 556 n.3 (internal citations and

3    quotations omitted). "Without some factual allegation in the complaint, it is hard to see

4    how a claimant could satisfy the requirements of providing not only 'fair notice' of the

5    nature of the claim, but also 'grounds' on which the claim rests." Id. (citing 5 Charles

6    Alan Wright & Arthur R. Miller, supra, at § 1202). A pleading must contain "only enough

7    facts to state a claim to relief that is plausible on its face." Id. at 570. If the "plaintiffs . . .

8    have not nudged their claims across the line from conceivable to plausible, their

9    complaint must be dismissed." Id. However, "a well-pleaded complaint may proceed

10   even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a

11   recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S.

12   232, 236 (1974)).

13

14   **B.    Standard under Rule 12(b)(1)**

15

16   Federal courts are courts of limited jurisdiction and are presumptively without

17   jurisdiction over civil actions. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375,

18   377 (1994). The burden of establishing the contrary rests upon the party asserting

19   jurisdiction. Id. Because subject matter jurisdiction involves a court's power to hear a

20   case, it can never be forfeited or waived. United States v. Cotton, 535 U.S. 625, 630

21   (2002). Accordingly, lack of subject matter jurisdiction may be raised by either party at

22   any point during the litigation, through a motion to dismiss pursuant to Rule 12(b)(1).

23   Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see also Int'l Union of Operating

24   Eng'rs v. Cnty. of Plumas, 559 F.3d 1041, 1043-44 (9th Cir. 2009). Lack of subject

25   matter jurisdiction may also be raised by the district court sua sponte. Ruhrgas AG v.

26   Marathon Oil Co., 526 U.S. 574, 583 (1999).

27   ///

28   ///

1    Indeed, "courts have an independent obligation to determine whether subject matter

2    jurisdiction exists, even in the absence of a challenge from any party." Id.; see Fed. R.

3    Civ. P. 12(h)(3) (requiring the court to dismiss the action if subject matter jurisdiction is

4    lacking).

5          There are two types of motions to dismiss for lack of subject matter jurisdiction: a

6    facial attack and a factual attack. Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.,

7    594 F.2d 730, 733 (9th Cir. 1979). Thus, a party may either make an attack on the

8    allegations of jurisdiction contained in the nonmoving party's complaint, or may

9    challenge the existence of subject matter jurisdiction in fact, despite the formal

10   sufficiency of the pleadings. Id.

11         When a party makes a facial attack on a complaint, the attack is unaccompanied

12   by supporting evidence, and it challenges jurisdiction based solely on the pleadings.

13   Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). If the motion to

14   dismiss constitutes a facial attack, the Court must consider the factual allegations of the

15   complaint to be true, and determine whether they establish subject matter jurisdiction.

16   Savage v. Glendale High Union Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir.

17   2003). In the case of a facial attack, the motion to dismiss is granted only if the

18   nonmoving party fails to allege an element necessary for subject matter jurisdiction. Id.

19   However, in the case of a facial attack, district courts "may review evidence beyond the

20   complaint without converting the motion to dismiss into a motion for summary judgment."

21   Safe Air for Everyone, 373 F.3d at 1039.

22         In the case of a factual attack, "no presumptive truthfulness attaches to plaintiff's

23   allegations." Thornill, 594 F.2d at 733 (internal citation omitted). The party opposing the

24   motion has the burden of proving that subject matter jurisdiction does exist and must

25   present any necessary evidence to satisfy this burden. St. Clair v. City of Chico,

26   880 F.2d 199, 201 (9th Cir. 1989). If the plaintiff's allegations of jurisdictional facts are

27   challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the

28   mere assertion that factual issues may exist.

8

1  Trentacosta v. Frontier Pac. Aircraft Ind., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987)

2  (quoting Exch. Nat'l Bank of Chi. v. Touche Ross & Co., 544 F.2d 1126, 1131 (2d Cir.

3  1976)).  Furthermore, the district court may review any evidence necessary, including

4  affidavits and testimony, in order to determine whether subject matter jurisdiction exists.

5  McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988); Thornhill, 594 F.2d at 733.

6  If the nonmoving party fails to meet its burden and the court determines that it lacks

7  subject matter jurisdiction, the court must dismiss the action.  Fed. R. Civ. P. 12(h)(3).

8         A court granting a motion to dismiss a complaint must then decide whether to

9  grant leave to amend.  Leave to amend should be "freely given" where there is no

10 "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

11 to the opposing party by virtue of allowance of the amendment, [or] futility of the

12 amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

13 Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

14 be considered when deciding whether to grant leave to amend).  Not all of these factors

15 merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

16 carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

17 185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

18 "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

19 Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

20 1013 (9th Cir. 2005)); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

21 1989) ("Leave need not be granted where the amendment of the complaint . . .

22 constitutes an exercise in futility . . . .")).

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

9

**ANALYSIS**

A.      **Section 1983 Claims**

Plaintiffs' First Cause of Action alleges that Defendants violated their First Amendment right to freedom of speech and right to petition the government for redress of grievances, as well as their Fifth Amendment and Fourteenth Amendment rights to due process.  (ECF No. 2 at 22.)  Plaintiffs' Fifth Cause of Action alleges that Defendants violated Plaintiffs' Fifth Amendment substantive due process rights by interfering with their spousal relationships.  (ECF No. 2 at 56.)

Section 1983 provides a cause of action against persons acting under the color of state law.  See 42 U.S.C. § 1983.  To act under state law, a defendant must "exercise power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  West v. Atkins, 487 U.S. 42, 49 (1988).  "There is no valid basis for a claim under § 1983" brought against a federal official acting under color of federal law.  Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1987).  In the present case, while Plaintiffs allege that Defendant Jones is liable under § 1983 for violating Plaintiffs' constitutional rights, Plaintiffs make no allegation that Defendant Jones acted under the color of state law.  Defendant Jones is clearly a federal actor and acted under the color of federal, rather than state, law.  Accordingly, Plaintiffs have failed to state a cognizable claim against Defendant Jones under § 1983.

Furthermore, § 1983 provides recourse to persons who have been deprived of their constitutional rights by the actions of a person acting under color of law.  42 U.S.C. § 1983 (emphasis added).  The United States is not a "person" within the meaning of § 1983.  See Jachetta v. United States, 653 F.3d 898, 908 (9th Cir. 2011) (discussing suit against federal agencies pursuant to § 1983); Fixel v. United States, 737 F. Supp. 593, 596 (D. Nev. 1990) ("The United States is not a 'person' and cannot be sued under § 1983) (citing Accardi v. United States, 435 F.2d 1239 (3d Cir. 1970)).

10

1    Plaintiffs argue that the United States waived its sovereign immunity in § 1983

2    actions when it signed the United Nations International Covenant on Civil and Political

3    Rights ("ICCPR"), and that the doctrines of treaty estoppel and judicial estoppel prevent

4    the government from claiming sovereign immunity in such actions.  However, "it is

5    axiomatic that the United States may not be sued without its consent and that the

6    existence of consent is a prerequisite for jurisdiction."  United States v. Mitchell, 463 U.S.

7    206, 212 (1983).  Before a court may exercise jurisdiction over any suit against the

8    government, there must be "a clear statement from the United States waiving sovereign

9    immunity, together with a claim falling within the terms of the waiver."  United States v.

10   White Mountain Apache Tribe, 537 U.S. 465, 472 (2003). "The government's waiver of

11   sovereign immunity cannot be implied, but 'must be unequivocally expressed in statutory

12   text.'"  Jachetta, 653 F.3d at 903.  "Absent a waiver of sovereign immunity, courts have

13   no subject matter jurisdiction over cases against the government."  Kaiser v. Blue Cross

14   of Cal., 347 F.3d 1107, 1117 (9th Cir. 2003) (citing Mitchell, 463 U.S. at 212).  "The

15   ICCPR contains no explicit language waiving sovereign immunity of the United States."

16   Godfrey v. Ross, No. CIV 2:11-2308 WBS EFB, 2012 WL 507162, *5 (E.D. Cal. Feb 15,

17   2012).  Rather, the ICCPR "contains general statements affirming the rights of

18   individuals to live free from discrimination and oppression."  Id.  Accordingly, the ICCPR

19   is not a waiver of sovereign immunity, id., and Plaintiffs' argument fails.

20   Moreover, the United States is not judicially estopped from asserting its sovereign

21   immunity.  The doctrine of judicial estoppel provides that "where a party assumed a

22   certain position in a legal proceeding, and succeeds in maintaining that position, he

23   many not thereafter, simply because his interests have changed, assume a contrary

24   position . . . ."  Davis v. Wakelee, 156 U.S. 680, 689 (1895).  "This rule . . . 'generally

25   prevents a party from prevailing in one phase of a case on an argument and then relying

26   on a contradictory argument to prevail in another phase."  New Hampshire v. Maine,

27   532 U.S. 742, 749 (2001) (quoting Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000)).

28   ///

1    The government has not taken any contrary positions regarding its sovereign immunity in

2    the present litigation.  Thus, it is not judicially estopped from raising its sovereign

3    immunity as an affirmative defense against Plaintiffs' claims.

4         Because the United States has not waived its sovereign immunity in this case, the

5    Court does not have subject matter jurisdiction over Plaintiffs' § 1983 claims against the

6    government.  Defendants' motion to dismiss Plaintiffs' § 1983 claims is therefore

7    granted.

8

9         **B.    <u>Bivens</u> Violations**

10

11        Plaintiffs' Second Cause of Action alleges violations of Plaintiffs' Fourth, Fifth, and

12   Fourteenth Amendment rights pursuant to <u>Bivens</u>.  (ECF No. 2 at 26, citing 403 U.S.

13   388.)  <u>Bivens</u> created a remedy for violations of constitutional rights committed by federal

14   officers acting in their individual capacities.  <u>Consejo de Desarrollo Economico de</u>

15   <u>Mexicall, A.C. v. United States</u>, 482 F.3d 1157, 1173 (9th Cir. 2007) (citing <u>Bivens</u>,

16   403 U.S. 388)).  Thus, to state a <u>Bivens</u> claims, a plaintiff must allege that persons acting

17   under the color of federal law violated his constitutional rights.  <u>Martin v. Sias</u>, 88 F.3d

18   774, 775 (9th Cir. 1996) (citing <u>Van Strum v. Lawn</u>, 940 F.2d 406, 409 (9th Cir. 1991)).

19   An action under <u>Bivens</u> is therefore identical to one brought under 42 U.S.C. § 1983

20   except for the replacement of a state actor under § 1983 by a federal actor under

21   <u>Bivens</u>.  <u>Id.</u>

22

23        **1.    Sovereign Immunity**

24

25        "In a suit against the United States, there cannot be a right to money damages

26   without waiver of sovereign immunity."  <u>United States v. Testan</u>, 424 U.S. 392, 400

27   (1976).  The doctrine of sovereign immunity bars <u>Bivens</u> actions against the United

28   States.  <u>Arnsberg v. United States</u>, 757 F.2d 971, 980 (9th Cir. 1984).

1   The Court therefore lacks subject matter jurisdiction over Plaintiffs' <u>Bivens</u> claims against

2   the government.

3   　　Moreover, "[i]t has long been the rule that the bar of sovereign immunity cannot

4   be avoided by naming officers and employees of the United States as defendants."

5   <u>Gilbert v. DaGrossa</u>, 756 F.2d 1455, 1458 (9th Cir. 1985) (citing <u>Larson v. Domestic &</u>

6   <u>Foreign Commerce Corp.</u>, 337 U.S. 682, 688 1949)).  Claims against federal officials in

7   their official capacities are essentially claims against the United States.  <u>Kentucky v.</u>

8   <u>Graham</u>, 473 U.S. 159, 165-66 (1985) (citing <u>Monell v. N.Y.C. Dep't of Soc. Servs.</u>,

9   436 U.S. 658, 690 n.55 (1978)).  Thus, a <u>Bivens</u> action "can be maintained against a

10  defendant in his or her individual action only, and not in his or her official capacity."

11  <u>Vaccaro v. Dobre</u>, 81 F.3d 854, 857 (9th Cir. 1996) (quoting <u>Daly-Murphy</u>, 837 F.2d 348

12  (9th Cir. 1987)).  As such, Plaintiffs' claims against Defendant Jones in his personal

13  capacity are essentially claims against the United States, and therefore is without merit.

14  　　Plaintiffs argue that <u>Ex Parte Young</u>, 209 U.S. 123 (1908), protects their claim

15  against Defendants.  However, <u>Ex Parte Young</u> "provides a narrow exception to

16  Eleventh Amendment immunity for certain suits seeking declaratory and injunctive relief

17  against unconstitutional actions taken by state actors in their official capacities."

18  <u>Rounds v. Or. State Bd. of Higher Ed.</u>, 166 F.3d 1032, 1036 (9th Cir. 1999) (citing

19  <u>Ex Parte Young</u>, 209 U.S. at 155-56).  The Eleventh Amendment precludes states from

20  being sued in federal court, and thus bars § 1983 suits against state governments.  <u>See,</u>

21  <u>e.g.</u>, <u>Alabama v. Pugh</u>, 438 U.S. 781 (1978); <u>Jackson v. Hayakawa</u>, 682 F.2d 1344,

22  1350 (9th Cir. 1982).  <u>Ex Parte Young</u> is thus inapplicable to Plaintiffs' case as it is

23  sovereign immunity and not Eleventh Amendment immunity that bars Plaintiffs' claims.

24  Plaintiffs have therefore failed to state a claim upon which relief can be granted, and the

25  Court lacks subject matter jurisdiction over Plaintiffs' claim.  Accordingly, Defendants'

26  motion to dismiss Plaintiffs' <u>Bivens</u> claims against both the United States and Defendant

27  Jones in his official capacity is granted.

28  ///

1

2

### 2.      Claim against Defendant Jones in his Personal Capacity

3        Sovereign immunity does not bar actions for damages, including a <u>Bivens</u> claim,

4   against a federal employee in his individual capacity for violations of a plaintiff's

5   constitutional rights. <u>Gilbert</u>, 756 F.2d at 1459.  However, the plaintiff "must plead that

6   each [g]overnment-official defendant, through the official's own individual actions, has

7   violated the Constitution." <u>Iqbal</u>, 556 U.S. at 676.  Moreover, "vicarious liability is

8   inapplicable to <u>Bivens</u> . . . ." <u>Id.</u>  Plaintiffs' Complaint contains no allegation that

9   Defendant Jones was personally involved in the facts giving rise to Plaintiffs' <u>Bivens</u>

10  claims.  Rather, Plaintiffs assert only that Defendant Jones "is the director of the United

11  States of America Bureau of Alcohol Tobacco and Firearms."  (ECF No. 2 at 3.)

12  Plaintiffs plead no other facts to suggest that Defendant Jones, through his "own

13  individual actions, has violated the Constitution." <u>Iqbal</u>, 556 U.S. at 676.  As such,

14  Plaintiffs have failed to state a claim against Defendant Jones in his individual capacity.

15  Defendants' motion to dismiss Plaintiffs' Bivens claims against Defendant Jones in his

16  individual capacity is therefore granted.

17  ### C.      FTCA Claims

18

19

20        Plaintiffs' Third Cause of Action alleges state law tort claims for malicious

21  prosecution, wrongful arrest, and wrongful imprisonment.  (ECF No. 2 at 40.)  Plaintiffs'

22  Fourth Cause of Action asserts that Defendants are liable for intentional infliction of

23  emotional distress.  (ECF No. 2 at 53.)  As noted above, while Plaintiffs do not

24  specifically bring suit under the FTCA, 28 U.S.C. §§ 2679(b)(1), 2679(d)(1), the FTCA is

25  Plaintiffs' only potential route for their claims to defeat sovereign immunity.  28 U.S.C.

26  § 2679.  The FTCA specifies that the "United States shall be liable . . . to tort claims in

27  the same manner and to the same extent as a private individual under like

28  circumstances." <u>Id.</u> § 2676.

14

1   The terms of the FTCA create liability for the government if the act is a tort in the state

2   where the conduct occurred.  Id. § 2671.  The FTCA is the exclusive remedy for any tort

3   claim resulting from the act or omission of a government employee acting within the

4   scope his or her employment, with the exception of Bivens remedies for constitutional

5   tort claims.  See id. § 2679.  The FTCA waives sovereign immunity for claims against the

6   federal government arising from torts committed by federal employees who are acting

7   within the scope of their employment.  Id. §§ 1346(b)(1), 2679(d)(1).  Thus, Plaintiffs may

8   properly bring suit against Defendants for their state law tort claims.

9        However, the FTCA has a two-year statute of limitations.  28 U.S.C. § 2401(b).

10   "[T]he statute of limitations in 28 U.S.C. § 2401(b) is jurisdictional . . . ."  Marley v. United

11   States, 567 F.3d 1030, 1032 (9th Cir. 2009).  "As a general rule, a claim accrues 'when a

12   plaintiff knows or has reason to know of the injury which is the basis of his action.'"

13   Hensley v. United States, 531 F.3d 1052, 1056 (9th Cir. 2008) (quoting Gibson v. United

14   States, 781 F.2d 1334, 1344 (9th Cir. 1986)).  Under California law, "[t]he elements of a

15   tortious claim of false imprisonment are: (1) the non-consensual, intentional confinement

16   of a person, (2) without lawful privilege, and (3) for an appreciable period of time,

17   however brief."  Bulfer v. Dobbins, No. 09-CV-1250 JLS (POR), 2011 WL 530039, *14

18   (S.D. Cal. Feb. 7, 2011) (quoting Easton v. Sutter Coast Hosp., 80 Cal. App. 4th 485

19   (2000)).  "False arrest is not a different tort; it is merely 'one way of committing a false

20   imprisonment."  Id. (quoting Martinez v. City of L.A., 141 F.3d 1373, 1379 (9th Cir.

21   1998)).  "A cause of action for false arrest accrues on the arrest and is actionable

22   immediately."  Id. (quoting Mohlman v. City of Burbank, 179 Cal. App. 3d 1037 (1986)).

23   A cause of action for intentional infliction of emotional distress accrues, and the two-year

24   statute of limitations begins to run, when the plaintiff suffers the severe emotional

25   distress.  Thomas v. Hickman, No. 1:06-CV-0215 AWI SMS, 2009 WL 1273190, *19

26   (E.D. Cal. May 5, 2009) (quoting Cantu v. Resolution Trust Corp., 4 Cal. App. 4th 857,

27   889 (1992)).

28   ///

1  In early June of 2007, the Vang Plaintiffs were arrested and charged with counts

2  arising from an alleged conspiracy to overthrow the government of Laos.  (ECF

3  No. 10-1.)  Plaintiffs' claims for false arrest and false imprisonment thus accrued in June

4  2007, and the statute of limitations for those claims expired in early June 2009.

5  Assuming that Plaintiffs suffered severe emotional distress at the time of the Vang

6  Plaintiffs' arrest, as Plaintiffs allege that they were "quite literally scared to death over the

7  decision by the [United States] to bring these false charges," Plaintiffs' cause of action

8  for intentional infliction of emotional distress also accrued at the time of the arrest.

9  The Vang Plaintiffs filed their motion to dismiss for outrageous government

10  conduct on March 9, 2009.  (ECF No. 10-3.)  Thus, at the very latest, Plaintiffs knew or

11  had reason to know of Defendants' tortious conduct, and their injuries arising therefrom,

12  by March 2009.  Under this view, Plaintiffs' claims for wrongful arrest, wrongful

13  imprisonment, and intentional infliction of emotional distress accrued in March 2009, and

14  the statute of limitations for those claims expired in March of 2011.  However, Plaintiffs

15  did not present their tort claims to the Bureau of Alcohol, Tobacco, Firearms, and

16  Explosives until July of 2011.  (ECF No. 2 at 6-7.)  Thus, whether Plaintiffs' claims

17  accrued in June 2007 or March 2009, Plaintiffs' claims for wrongful arrest, wrongful

18  imprisonment and intentional infliction of emotional distress are barred by the FTCA's

19  statute of limitations.  Because the FTCA's statute of limitations is jurisdictional, Marley,

20  567 F.3d at 1032, the Court lacks jurisdiction over Plaintiffs' claims.  Defendants' motion

21  to dismiss the claims is therefore granted.

22  The two-year statute of limitations does not, however, bar Plaintiffs' malicious

23  prosecution claim.  A common law action for malicious prosecution requires a plaintiff to

24  establish that "the underlying prosecution: (1) was commenced by or at the direction of

25  the defendant and terminated in [the plaintiff's] favor; (2) was brought without probable

26  cause, and (3) was initiated with malice."  Conrad v. United States, 447 F.3d 760, 767

27  (9th Cir. 2006) (quoting Sheldon Appel Co. v. Albert & Oliker, 47 Cal. 3d 863 (1989)).

28  ///

1   A malicious prosecution claim accrues when the underlying prosecution terminates in the

2   plaintiff's favor.  Geiche v. City of S.F., No. C 08-3233 JL, 2009 WL 1948830, *3 (N.D.

3   Cal. July 2, 2009) (citing Babb v. Sup. Ct., 3 Cal. 3d 841, 846 (1971)); see also Heck v.

4   Humphrey, 512 U.S. 477, 484-85 (1994). "The theory underlying the requirement of

5   favorable termination is that it tends to indicate the innocence of the accused, and

6   coupled with the other elements of lack of probable cause and malice, establishes the

7   tort, that is, the malicious and unfounded charge against an innocent person."  Jaffe v.

8   Stone, 18 Cal. 2d 146, 150 (1941).  The California Supreme Court has indicated that

9   "if . . . the dismissal is on technical grounds, or for procedural reasons, or for any other

10  reason not inconsistent with [the plaintiff's] guilt, it does not constitute a favorable

11  termination."  Id.; see also Babb, 3 Cal. 3d at 750-751.  Moreover, California courts have

12  held that a dismissal "in the interests of justice" is not a favorable termination for

13  purposes of a malicious prosecution claim, as it "does not necessarily imply factual

14  innocence, but rather may reflect the result of a negotiated or pragmatic disposition of

15  the case."  People v. Matthews, 7 Cal. App. 4th 1052, 1056 (1992) (citing People v.

16  Glimps, 92 Cal. App. 3d 323-24 (1979)).

17         Here, Plaintiffs do not allege facts sufficient to demonstrate that the prosecution of

18  the Vang Plaintiffs terminated in their favor.  The charges against the Vang Plaintiffs

19  were dismissed in part on their own motion and in part "in the interests of justice."  These

20  dismissals do not constitute a favorable termination for purposes of a malicious

21  prosecution claim under California law, as they do not "necessarily imply" the Vang

22  Plaintiffs' "factual innocence."  Matthews, 7 Cal. App. 4th at 1056.  Accordingly, Plaintiffs

23  have failed to state a claim for malicious prosecution, and Defendants' motion to dismiss

24  the claim is granted.

25  ///

26  ///

27  ///

28  ///

17

1

2

### D.     Requests for Declaratory and Injunctive Relief

3

        In each cause of action, Plaintiffs request that the Court enjoin Defendants from

4

retaliating against Plaintiffs for bringing suit and committing an act in retaliation for

5

Plaintiffs' previous attempts to bring justice for the Hmong people in Laos.  Plaintiffs also

6

seek an affirmative injunction and ask that the Court require Defendants to issue a

7

declaration that Defendants violated Plaintiffs' civil rights, and that Plaintiffs are factually

8

innocent of the criminal charges brought against them.

9

        As established above, neither § 1983 nor <u>Bivens</u> affords Plaintiffs relief in the

10

present case.  <u>See</u> <u>supra</u>.  Accordingly, Defendants' motion to dismiss Plaintiffs'

11

requests for declaratory and injunctive relief pursuant to both § 1983 and <u>Bivens</u> is

12

granted.

13

        To the extent that Plaintiffs request declaratory and injunctive relief pursuant to

14

the FTCA, these claims also fail.  The FTCA provides federal jurisdiction only for civil

15

claims against the United States "for money damages."  28 U.S.C. § 1346(b)(1).  The

16

FTCA does not provide for injunctive relief.  <u>Id.</u>  Thus, Defendants' motion to dismiss

17

Plaintiffs' claims for declaratory and injunctive relief pursuant to the FTCA is also

18

granted.

19

///

20

///

21

///

22

///

23

///

24

///

25

///

26

///

27

///

28

///

18

**CONCLUSION**

    For the reasons set forth above, Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 9) is GRANTED with leave to amend.  Not later than twenty (20) days following the date of this Memorandum and Order is electronically filed, Plaintiffs may file an amended complaint.  If no amended complaint is filed within said twenty- (20) day period, without further notice to the parties, the causes of action dismissed by virtue of the Memorandum and Order will be dismissed with prejudice.

    IT IS SO ORDERED.

Dated:  October 16, 2012

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE