1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11   NHIA KAO VANG, et al.,                    No.  2:12-cv-01226-MCE-AC

12                     Plaintiffs,

13         v.                                   **MEMORANDUM AND ORDER**

14   STEVEN DECKER, et al.,

15                     Defendants.

16

17         Through this action, Plaintiffs Nhia Kao Vang, Chao Xiong, David Vang, Chong

18   Yang, Chue Hue Vang and Pang Her (collectively "Plaintiffs") allege violations of federal

19   law arising out of the 2007 criminal investigation and prosecution of Plaintiffs Chue Hue

20   Vang, Nhia Kao Vang and David Vang (collectively "the Vang Plaintiffs") for an alleged

21   plot to obtain military weapons to overthrow the government of Laos.  Plaintiffs allege

22   violations of the First, Fifth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983

23   and Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).  Plaintiffs also allege

24   state law tort claims for malicious prosecution, wrongful arrest, wrongful imprisonment

25   and intentional infliction of emotional distress.  Finally, Plaintiffs request declaratory and

26   injunctive relief.

27   ./// 

28   ///

                                              1

On January 28, 2013, Defendant Decker filed a Motion to Dismiss Plaintiffs' Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] and for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  (ECF No. 32.)  Plaintiffs filed a timely opposition.  (ECF No. 34.)  For the reasons set forth below, Defendant's Motion to Dismiss is GRANTED.[2]

## BACKGROUND[3]

Plaintiffs are three Hmong couples residing in West Sacramento and Fresno, California.  Plaintiffs contend that the Hmong people who remain in Laos are subject to a genocide carried out by the Laotian government.  Plaintiffs further contend that the United States, which called on the Hmong people to fight on its behalf against pro-communist forces during the Vietnam War, has failed to aid the Hmong people in their plight in Laos.  Plaintiffs were involved in efforts to bring about a peaceful solution to the Hmong genocide in Laos.

Plaintiff Chue Hue Vang served as secretary to an individual identified as General Vang Pao, who was interested in producing a documentary film concerning the Hmong plight, and was generally interested in raising money and increasing the overall support for aiding the Hmong people in Laos.  Plaintiff Chue Hue Vang was told by an individual named Locha Thao that a meeting to discuss documentary film production was going to be held in Sacramento.  Locha Thao received this information from Defendant Decker. On February 7, 2007, Plaintiff Chue Hue Vang met at a Sacramento restaurant with other Hmong elders and Defendant Decker.

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefs.  E.D. Cal. Local R. 78-230(g).

[3] Unless otherwise noted, the following recitation of facts is derived, sometimes verbatim, from Plaintiffs' Complaint.  (ECF No. 2.)

At the meeting, the group gave Defendant Decker maps that they had created, which showed the locations of Hmong people trapped in the jungles of Laos.  Plaintiff Chue Hue Vang primarily served as an interpreter at the meeting.  Defendant Decker later asked the group to follow him across the street to a mobile trailer, where weapons of various kinds were on display.  Plaintiff Chue Hue Vang understood the meeting and the display of weapons to mean that the United States was interested in assisting the Hmong people in escaping from Laos.  At no time during this meeting was there any discussion, plan, or agreement regarding a military takeover of Laos, nor did Plaintiff Chue Hue Vang make any agreement regarding the purchase, possession, or transportation of weapons.

Plaintiff Chue Hue Vang attended a second meeting on February 18, 2007, where a documentary film was discussed.  After the meeting, Plaintiff Chue Hue Vang was invited to go to a new location at the Doubletree Hotel in Sacramento.  He understood the meeting at the hotel to be connected to the documentary film project.  However, at the hotel, Defendant Decker showed Plaintiff Chue Hue Vang and other Hmong elders several AK 47s.  Defendant Decker led a discussion about a military-backed effort to save the trapped Hmong people in Laos.  Plaintiff Chue Hue Vang was confused by the conversation, as he knew that General Vang Pao did not have the money to fund the type of effort Defendant Decker was discussing.  According to Plaintiffs, the discussion focused on using weapons as a means to help the Hmong people in Laos defend themselves and escape; an overthrow of the Laotian government was never mentioned.  Again, Plaintiff Chue Hue Vang inferred that the United States supported this plan.

Plaintiff Nhia Kao Vang was also asked to attend a meeting to discuss helping the Hmong people in Laos.  He was asked to attend the meeting "with an American government person," and was asked to drive a Hmong doctor to the meeting.  The group went to a hotel, where Defendant Decker showed Plaintiff Nhia Kao Vang and others a display of weapons.  At no point was a military takeover of Laos discussed.  Plaintiff Nhia Kao Vang was also asked to go on a trip to Washington, D.C.

He agreed to go on the trip, with six other individuals.  Plaintiffs allege that this trip was simply for tourism and "had nothing to do with any kind of fundraising effort" as Defendant Decker later claimed.

Plaintiff David Vang was told by Locha Thao to prepare a document called "the Popcorn document."  Defendant Decker told Locha Thao to ask Plaintiff David Vang to do so.  The Popcorn document detailed a plan for a military coup of Laos.  Locha Thao also told Plaintiff David Vang that Defendant Decker had stated that the United States not only supported the coup described in the Popcorn document, but was going to fund the operation and provide arms and special forces for it.  Plaintiff David Vang was also told that the United States would pay him $5,000 for preparing the document.  Plaintiff David Vang thus prepared the Popcorn document with the understanding that the operation detailed therein was a government-backed military operation.

The Criminal Case[4]

As a result of the above listed facts, a criminal complaint was filed before this Court on June 4, 2007, charging the Vang Plaintiffs, among others, with conspiracy to violate the Neutrality Act and conspiracy to receive and possess missiles, among other things.  Plaintiffs allege that Defendant Decker intentionally deceived the grand jury, as Defendant Decker knew that the Vang Plaintiffs did not have any criminal intent to enter into an illegal conspiracy to overthrow the Laotian government, or to possess military equipment unlawfully.  (ECF No. 2 at 10.)

Arrest warrants were returned executed on June 4, 2007, for Plaintiff Chue Hue Vang, and on June 5, 2007, for Nhia Kao Vang.  An arrest warrant was returned executed on June 14, 2007, for Plaintiff David Vang.

///

///

---

[4] The facts regarding the criminal case against the Vang Plaintiffs are taken from reference to the docket in that case unless otherwise stated.  (ECF No. 10-1).  The Court may consider documents referenced in a complaint, or which a complaint in some way depends on, in a motion to dismiss without converting the motion to dismiss into a motion for summary judgment.  Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005).

On June 14, 2007, the Vang Plaintiffs were charged with numerous counts arising from the alleged conspiracy to overthrow the government of Laos.  Plaintiffs were held in custody, until they were released on bond on July 13, 2007.

On March 9, 2009, the Vang Plaintiffs, among others, filed a Motion to Dismiss for Outrageous Government Conduct.  Plaintiffs alleged that both the undercover agents and the prosecutors engaged in misconduct throughout the prosecution and the underlying investigation.  (ECF No. 10-3.)  The Court denied the motion on May 11, 2009, but provided that Plaintiffs could renew the motion after further discovery.

Ultimately, a Second Superseding Indictment was returned on June 24, 2010.  Plaintiffs filed numerous motions to dismiss, including a renewed Motion to Dismiss for Outrageous Government Conduct.  On November 12, 2010, the Court granted in part and denied in part motions to dismiss Counts One, Three, Four and Five.  The Court dismissed Counts Four and Five on the grounds that the Second Superseding Indictment "fail[ed] to put each defendant on notice of the nature of charges against him in order to allow him to prepare a defense or to ensure he is being prosecuted on the basis of the facts presented to the grand jury" and "fail[ed] to apprise each defendant of the specific conduct he engaged in the allegedly violates the [Neutrality] Act."  (ECF No. 10-6.)

Subsequently, on January 10, 2011, the Government moved to dismiss all charges against the Vang Plaintiffs "in the interests of justice."  (ECF No. 10-8.)  The Court granted the motion that same day.

**PROCEDURAL HISTORY**

On July 12, 2011, Plaintiffs Nhia Kao Vang, Chao Xiong, David Vang and Chong Yang served FTCA claims on the United States.  On July 29, 2011, Plaintiffs Chue Hue Vang and Pang Her served their FTCA claims on the United States.

///

1  On July 18, 2011, and August 11, 2011, respectively, the Government acknowledged

2  receipt of the claims.  More than six months have passed since the submission of

3  Plaintiffs' FTCA claims, and the Government has neither accepted nor denied the claims.

4      Plaintiffs filed their original complaint in this action on May 7, 2012, against the

5  United States; B. Todd Jones, the director of the Bureau of Alcohol, Tobacco and

6  Firearms; and special agent Steven Decker.  (ECF No. 2.)  Plaintiffs sued Defendant

7  Jones in his official capacity, but named Defendant Decker in his individual capacity.

8  (Id.)

9      On July 31, 2012, Defendants Jones and the United States filed a Motion to

10  Dismiss Plaintiffs' Complaint for failure to state a claim and for lack of subject matter

11  jurisdiction.  (ECF No. 9.)  At that time, Defendant Decker had not yet been served, and

12  so did not join in the motion to dismiss.  On October 17, 2012, the Court granted

13  Defendants' motion to dismiss in its entirety, giving leave to amend within twenty days.

14  (ECF No. 17.)  The Order specifically stated that if Plaintiffs did not file an amended

15  complaint within twenty days, the causes of action dismissed by virtue of the Order

16  would be dismissed with prejudice.  (ECF No. 17 at 19.)  Plaintiffs did not file an

17  amended complaint within twenty days of the Court's order.  Rather, Plaintiffs filed a

18  Statement Re Non-Filing of First Amended Complaint.  (ECF No. 25.)  Plaintiffs stated to

19  the Court that they would not file an amended complaint as they have no further facts to

20  allege.  (ECF No. 25 at 1.)  Accordingly, Plaintiffs' claims against the United States and

21  Jones were dismissed with prejudice.

22      On October 25, 2012, Plaintiffs filed a motion requesting the Court's permission to

23  serve Defendant Decker by publication pursuant to Rule 4(e) and requesting an

24  extension of time to complete service on Defendant Decker.  (ECF No. 22.)  The Court

25  denied Plaintiffs' motion.  (ECF No. 28.)  The United States Attorney's Office then

26  stipulated with Plaintiffs to receive the Summons and Complaint on behalf of Defendant

27  Decker.  (ECF No. 29.)  Defendant Decker was thus deemed served on November 28,

28  2012.  (ECF No. 29.)

1

**STANDARDS**

2

3       **A.  Rule 12(b)(6)**

4

5       On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all

6   allegations of material fact must be accepted as true and construed in the light most

7   favorable to the non-moving party.  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38

8   (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain statement of the claim

9   showing that the pleader is entitled to relief,' in order to 'give the defendant a fair notice

10  of what the . . . claim is and the grounds upon which it rests.'"  Bell Atl. Corp. v.

11  Twombly, 550 U.S. 544, 555 (1997) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).

12  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed

13  factual allegations.  Id.  However, "a plaintiff's obligations to provide the grounds of his

14  entitlement to relief requires more than labels and conclusions, and a formulaic recitation

15  of the elements of a cause of action will not do."  Id.  (internal citations and quotations

16  omitted).  A court is not required to accept as true a "legal conclusion couched as a

17  factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,

18  550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief above the

19  speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R.

20  Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading

21  must contain something more than a "statement of facts that merely creates a suspicion

22  [of] a legally cognizable right of action.")).

23      Furthermore, "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket

24  assertion, of entitlement to relief."  Twombly, 550 U.S. at 556 n.3 (internal citations and

25  quotations omitted).  "Without some factual allegation in the complaint, it is hard to see

26  how a claimant could satisfy the requirements of providing not only 'fair notice' of the

27  nature of the claim, but also 'grounds' on which the claim rests."  Id.  (citing 5 Charles

28  Alan Wright & Arthur R. Miller, supra, at § 1202).

1   A pleading must contain "only enough facts to state a claim to relief that is plausible on

2   its face." Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line

3   from conceivable to plausible, their complaint must be dismissed."  Id.  However, "a well-

4   pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those

5   facts is improbable, and 'that a recovery is very remote and unlikely.'"  Id. at 556 (quoting

6   Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

7

8       **B.  Rule 12(b)(1)**

9

10      Federal courts are courts of limited jurisdiction, and are presumptively without

11  jurisdiction over civil actions.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375,

12  377 (1994).  The burden of establishing the contrary rests upon the party asserting

13  jurisdiction.  Id.  Because subject matter jurisdiction involves a court's power to hear a

14  case, it can never be forfeited or waived.  United States v. Cotton, 535 U.S. 625, 630

15  (2002).  Accordingly, lack of subject matter jurisdiction may be raised by either party at

16  any point during the litigation through a motion to dismiss pursuant to Rule 12(b)(1).

17  Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see also Int'l Union of Operating

18  Eng'rs v. Cnty. of Plumas, 559 F.3d 1041, 1043-44 (9th Cir. 2009).  Lack of subject

19  matter jurisdiction may also be raised by the district court sua sponte.  Ruhrgas AG v.

20  Marathon Oil Co., 526 U.S. 574, 583 (1999).  Indeed, "courts have an independent

21  obligation to determine whether subject matter jurisdiction exists, even in the absence of

22  a challenge from any party."  Id.; see also Fed. R. Civ. P. 12(h)(3) (requiring the court to

23  dismiss the action if subject matter jurisdiction is lacking).

24      There are two types of motions to dismiss for lack of subject matter jurisdiction: a

25  facial attack, and a factual attack.  Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.,

26  594 F.2d 730, 733 (9th Cir. 1979).

27  ///

28  ///

8

1    Thus, a party may either make an attack on the allegations of jurisdiction contained in

2    the nonmoving party's complaint, or may challenge the existence of subject matter

3    jurisdiction in fact, despite the formal sufficiency of the pleadings.  Id.

4         When a party makes a facial attack on a complaint, the attack is unaccompanied

5    by supporting evidence, and it challenges jurisdiction based solely on the pleadings.

6    Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  If the motion to

7    dismiss constitutes a facial attack, the Court must consider the factual allegations of the

8    complaint to be true, and determine whether they establish subject matter jurisdiction.

9    Savage v. Glendale High Union Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir.

10   2003).  In the case of a facial attack, the motion to dismiss is granted only if the

11   nonmoving party fails to allege an element necessary for subject matter jurisdiction.  Id.

12   However, in the case of a facial attack, district courts "may review evidence beyond the

13   complaint without converting the motion to dismiss into a motion for summary judgment."

14   Safe Air for Everyone, 373 F.3d at 1039.

15        In the case of a factual attack, "no presumptive truthfulness attaches to plaintiff's

16   allegations."  Thornill, 594 F.2d at 733 (internal citation omitted).  The party opposing the

17   motion has the burden of proving that subject matter jurisdiction does exist, and must

18   present any necessary evidence to satisfy this burden.  St. Clair v. City of Chico,

19   880 F.2d 199, 201 (9th Cir. 1989).  If the plaintiff's allegations of jurisdictional facts are

20   challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the

21   mere assertion that factual issues may exist.  Trentacosta v. Frontier Pac. Aircraft Ind.,

22   Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting Exch. Nat'l Bank of Chi. v. Touche

23   Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976)).  Furthermore, the district court may

24   review any evidence necessary, including affidavits and testimony, in order to determine

25   whether subject matter jurisdiction exists.  McCarthy v. United States, 850 F.2d 558, 560

26   (9th Cir. 1988); Thornhill, 594 F.2d at 733.  If the nonmoving party fails to meet its

27   burden and the court determines that it lacks subject matter jurisdiction, the court must

28   dismiss the action.  Fed. R. Civ. P. 12(h)(3).

1

**ANALYSIS**

2

3        A.  **Request for Judicial Notice**

4

5        Defendant Decker requests that the Court take judicial notice of certain

6   documents, namely documents from the criminal case against the Vang Plaintiffs and

7   the certification of the Attorney General stating that Defendant Decker was acting within

8   the scope of his employment when he engaged in the conduct at issue.  (ECF No. 32-1.)

9   "As a general rule, 'a district court may not consider any material beyond the pleadings

10  in ruling on a Rule 12(b)(6) motion.'"  Lee v. City of L.A., 250 F.3d 668, 688 (9th Cir.

11  2001) (quoting Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other

12  grounds by Galbraith v. Cnty. of Santa Clara, 307 F.3d 1119 (9th Cir. 2002)).  However,

13  when ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court may take into

14  account materials which are the proper subject of judicial notice.  Heliotrope Gen., Inc. v.

15  Ford Motor Co., 189 F.3d 971, 981 (9th Cir. 1999).  Under Federal Rule of Evidence

16  201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is

17  either (1) generally known within the territorial jurisdiction of the trial court or (2) capable

18  of accurate and ready determination by resort to sources whose accuracy cannot

19  reasonably be questioned."  Fed. R. Evid. 201.  Pursuant to Rule 201, courts may take

20  judicial notice of "undisputed matters of public record."  Lee, 250 F.3d at 688.

21        Defendant Decker requests that the Court take judicial notice of eight documents

22  from the criminal case against the Vang Plaintiffs (the "Jack case").  (ECF No. 32-1.)  A

23  federal court "may take notice of proceedings in other courts, both within and without the

24  federal judicial system, if those proceedings have a direct relation to matters at issue."

25  Bias v. Moynihan, 508 F.3d 1212 (9th Cir. 2007).  Accordingly, the Court takes judicial

26  notice of Exhibits A through H to Defendant Decker's Motion to Dismiss.  (ECF

27  Nos. 32-2-9.)  The Court takes judicial notice of the existence of these filings, and not the

28  truth of any facts or allegations included therein.

1    Defendant Decker also requests that the Court take judicial notice of the

2    certification pursuant to 28 U.S.C. § 2679(d) which certifies that Defendant Decker was

3    acting within the scope of his federal employment "with reference to all matters alleged in

4    the suit."  (ECF No. 32-10.)  However, judicial notice of the Attorney General's

5    certification is not a prerequisite to the Court accepting the certification as prima facie

6    evidence that Defendant Decker acted within the scope of his employment.  See, e.g.,

7    Desfosses v. Keller, 667 F. Supp. 2d 1210, 1215 (D. Idaho 2009) (finding that scope of

8    employment certification establishes that defendant was operating within scope of

9    employment without judicially noticing the certification).  Thus, the Court declines to

10   judicially notice the § 2679(d) certification (ECF No. 32-10) at this time.

11

12       **B.  Section 1983 Claims**

13

14   Plaintiffs bring several claims pursuant to 42 U.S.C. § 1983.  Plaintiffs' First

15   Cause of Action alleges that Defendant Decker violated Plaintiffs' First Amendment right

16   to freedom of speech and right to petition the government for redress of grievances, as

17   well as their Fifth Amendment and Fourteenth Amendment rights to due process.  (ECF

18   No. 2 at 22.)  Plaintiffs' Fifth Cause of Action alleges that Defendant Decker violated

19   Plaintiffs' Fifth Amendment substantive due process rights by interfering with their

20   spousal relationships.  (ECF No. 2 at 56.)

21   Section 1983 provides a cause of action against persons acting under the color of

22   state law.  See 42 U.S.C. § 1983.  To act under state law, a defendant must "exercise

23   power possessed by virtue of state law and made possible only because the wrongdoer

24   is clothed with the authority of state law."  West v. Atkins, 487 U.S. 42, 49 (1988).

25   "There is no valid basis for a claim under § 1983" brought against a federal official acting

26   under color of federal law.  Daly-Murphy v. Winston, 837 F.2d 348, 355 (9th Cir. 1987).

27   ///

28   ///

11

1   In the present case, while Plaintiffs allege that Defendant Decker is liable under § 1983

2   for violating Plaintiffs' constitutional rights, Plaintiffs make no allegation that Defendant

3   Decker acted under the color of state law.  Plaintiffs specifically allege that Defendant

4   Decker is a federal law enforcement officer who acted "under color of legal authority in

5   connection with his position as an agent with the Bureau of Alcohol, Tobacco and

6   Firearms."  (ECF No. 2 at 3.)  Defendant Decker is clearly a federal actor and acted

7   under the color of federal, rather than state, law.  Accordingly, Plaintiffs have failed to

8   state a cognizable claim against Defendant Decker under § 1983.  Defendant's motion to

9   dismiss Plaintiffs' § 1983 claim is therefore granted.

10

11   **C.  Bivens Violations**

12

13       Plaintiffs' Second Cause of Action alleges violations of Plaintiffs' Fourth, Fifth and

14   Fourteenth Amendment rights pursuant to Bivens.  (ECF No. 2 at 26 (citing 403 U.S.

15   388).)  Bivens created a remedy for violations of constitutional rights committed by

16   federal officers acting in their individual capacities.  Consejo de Desarrollo Economico de

17   Mexicali, A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007) (citing Bivens,

18   403 U.S. 388)).  Thus, to state a Bivens claims, a plaintiff must allege that persons acting

19   under the color of federal law violated his constitutional rights.  Martin v. Sias, 88 F.3d

20   774, 775 (9th Cir. 1996) (citing Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991)).

21   An action under Bivens is therefore identical to one brought under 42 U.S.C. § 1983

22   except for the replacement of a state actor under § 1983 by a federal actor under

23   Bivens.  Id.

24       Defendant Decker asserts that the statute of limitations bars Plaintiffs' Bivens

25   claims for retaliation for free speech, due process violations, false arrest, suppression of

26   evidence, fabrication of evidence, interference with property rights, interference with

27   familial or spousal relationship and equal protection.

28   ///

1    The statute of limitations for a <u>Bivens</u> claim is determined by the forum state's statute of

2    limitations for personal injury claims.  <u>See</u> <u>Papa v. United States</u>, 281 F.3d 1004, 1009

3    (9th Cir. 2002).  In California, the applicable statute of limitations is two years.  <u>See</u> Cal.

4    Civ. Proc. Code § 335.1; <u>Yasin v. Coulter</u>, 449 F. App'x 687, 689 (9th Cir. 2011) (citing

5    Cal. Civ. Proc. Code § 335.1).  Federal law, however, determined when the claim

6    accrues.  <u>Lukovsky v. City of S.F.</u>, 535 F.3d 1044, 1048 (9th Cir. 2008).  Under federal

7    law, a <u>Bivens</u> claim accrues "when the plaintiff knows or has reason to know of the injury

8    which is the basis of the action."  <u>Id.</u>; <u>Yasin</u>, 449 F. App'x at 689.

9         In early June of 2007, the Vang Plaintiffs were arrested and charged with counts

10   arising from an alleged conspiracy to overthrow the government of Laos.  (ECF No.

11   10-1.)  Thus, at the earliest, Plaintiffs' claims for false arrest accrued in June 2007, and

12   the statute of limitations for those claims expired in early June 2009.  Alternatively,

13   Plaintiffs knew or had reason to know of Defendants' allegedly unconstitutional conduct,

14   and their injuries arising therefrom, at the very latest by March 9, 2009, when the Vang

15   Plaintiffs filed their Motion to Dismiss for Outrageous Government Conduct.  (ECF

16   No. 10-3.)  Under this view, Plaintiffs' <u>Bivens</u> claims, except for Plaintiffs' claim for

17   malicious prosecution in violation of the Fifth Amendment, accrued at the latest in March

18   2009, and the statute of limitations for those claims expired in March of 2011.  However,

19   Plaintiffs did not file their Complaint in the instant action until May 2012—over a year

20   after the statute of limitations expired.  Thus, Plaintiffs' <u>Bivens</u> claims, except for the

21   claim for malicious prosecution, are time barred.

22        The two-year statute of limitations does not, however, bar Plaintiffs' malicious

23   prosecution claim.  An action for malicious prosecution under <u>Bivens</u> requires the plaintiff

24   to show tortious conduct under the elements of state law, and the intent to deprive the

25   individual of a constitutional right.  <u>See</u> <u>Madrigal v. California</u>, 2006 WL 3834284, at *3

26   (E.D. Cal. Dec. 26, 2006).

27   ///

28   ///

1    Under California law, an action for malicious prosecution requires a plaintiff to establish

2    that "the underlying prosecution: (1) was commenced by or at the direction of the

3    defendant and terminated in [the plaintiff's] favor; (2) was brought without probable

4    cause; and (3) was initiated with malice." Conrad v. United States, 447 F.3d 760, 767

5    (9th Cir. 2006) (quoting Sheldon Appel Co. v. Albert & Oliker, 47 Cal. 3d 863 (1989)).

6        A malicious prosecution claim accrues when the underlying prosecution

7    terminates in the plaintiff's favor. Geiche v. City of S.F., No. C 08-3233 JL, 2009 WL

8    1948830, *3 (N.D. Cal. July 2, 2009) (citing Babb v. Sup. Ct., 3 Cal. 3d 841, 846 (1971));

9    see also Heck v. Humphrey, 512 U.S. 477, 484-85 (1994). "The theory underlying the

10   requirement of favorable termination is that it tends to indicate the innocence of the

11   accused, and coupled with the other elements of lack of probable cause and malice,

12   establishes the tort, that is, the malicious and unfounded charge against an innocent

13   person." Jaffe v. Stone, 18 Cal. 2d 146, 150 (1941). The California Supreme Court has

14   indicated that "if . . . the dismissal is on technical grounds, or for procedural reasons, or

15   for any other reason not inconsistent with [the plaintiff's] guilt, it does not constitute a

16   favorable termination." Id. Importantly for Plaintiffs' case, California courts have held

17   that a dismissal "in the interests of justice" is not a favorable termination for purposes of

18   a malicious prosecution claim, as it "does not necessarily imply factual innocence, but

19   rather may reflect the result of a negotiated or pragmatic disposition of the case."

20   People v. Matthews, 7 Cal. App. 4th 1052, 1056 (1992) (citing People v. Glimps,

21   92 Cal. App. 3d 323-24 (1979)). While the Ninth Circuit has held that "dismissal in the

22   interests of justice satisfies [the favorable termination] requirement if it reflects the

23   opinion of the prosecuting party of the court that the action lacked merit or would result

24   in a decision in favor of the defendant." Awabdy v. City of Adelanto, 368 F.3d 1062,

25   1068 (9th Cir. 2004).

26        Here, Plaintiffs do not allege facts sufficient to demonstrate that the prosecution of

27   the Vang Plaintiffs terminated in their favor. The charges against the Vang Plaintiffs

28   were dismissed in part on Plaintiffs' own motion and in part "in the interests of justice."

As to the charges that were dismissed on Plaintiffs' own motion, these charges were dismissed on the grounds that the Second Superseding Indictment "fail[ed] to put each defendant on notice of the nature of charges against him in order to allow him to prepare a defense or to ensure he is being prosecuted on the basis of the facts presented to the grand jury" and "fail[ed] to apprise each defendant of the specific conduct he engaged in that allegedly violates the [Neutrality] Act." (ECF No. 10-6.) Dismissal on such grounds does not "necessarily imply" the Vang Plaintiffs' "factual innocence." Matthews, 7 Cal. App. 4th at 1056.

As to the charges that were dismissed "in the interests of justice," Plaintiffs have alleged no facts plausibly suggesting that the dismissal of these charges reflected the opinion of the United States Attorneys or the Court that the action lacked merit. See Boulware v. Department of Ins., No. CV 09-4325-R(E), 2009 WL 3271060, at *9 (C.D. Cal. Oct. 8, 2009); see also Iqbal, 556 U.S. at 678. Plaintiffs have therefore failed to state a claim for malicious prosecution in violation of the Fifth Amendment. Accordingly, Defendant Decker's motion to dismiss Plaintiffs' Bivens claims is granted.[5]

### D.  Federal Tort Claims Act

Plaintiffs' Third Cause of Action alleges state law tort claims for malicious prosecution, wrongful arrest and wrongful imprisonment. (ECF No. 2 at 40.) Plaintiffs' Fourth Cause of Action asserts that Defendants are liable for intentional infliction of emotional distress. (ECF No. 2 at 53.) As noted above, while Plaintiffs do not specifically bring suit under the FTCA, 28 U.S.C. §§ 2679(b)(1), 2679(d)(1), the FTCA is Plaintiffs' only potential route for their claims to defeat sovereign immunity.

///

///

---

[5] Because Plaintiffs' claims against Defendant Decker are dismissed, the Court need not determine at this time whether Defendant Decker is entitled to qualified immunity.

15

28 U.S.C. § 2679.  The FTCA specifies that the "United States shall be liable . . . to tort claims in the same manner and to the same extent as a private individual under like circumstances."  Id. § 2676.  The terms of the FTCA create liability for the government if the act is a tort in the state where the conduct occurred.  Id. § 2671.  The FTCA is the exclusive remedy for any tort claim resulting from the act or omission of a government employee acting within the scope of his or her employment, with the exception of Bivens remedies for constitutional tort claims.  See id. § 2679.  The FTCA waives sovereign immunity for claims against the federal government arising from torts committed by federal employees who are acting within the scope of their employment.  Id. §§ 1346(b)(1), 2679(d)(1).

When a federal employee is sued for a wrongful or negligent act, the Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, empowers the Attorney General to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose."  28 U.S.C. § 2679(d)(2).  Upon such certification, the federal employee is dismissed from the action and the United States is substituted as the defendant.  Id.

If a defendant acts within the scope of his employment, he enjoys immunity from suit; if he acted outside the scope of employment, "he is personally answerable." Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 423 (1995).  Thus, the preliminary issue pertaining to Plaintiffs' FTCA claims is whether Defendant Decker acted within the scope of his employment.

As set forth above, Defendant submitted the certification stating that Defendant Decker was acting within the scope of his employment.  (ECE No. 32-10.)  The certification states that Joann Swanson, the Chief of the Civil Division of the United States Attorney's Office for the Northern District of California, was directed by Melinda Haag, the United States Attorney for the Northern District of California, to certify that Defendant Decker was acting within the scope of his federal employment "with reference to matters alleged in the suit."  (Id.)

1   Attorney Haag authorized Attorney Swanson to exercise this power pursuant to the

2   power vested in Attorney Haag by the Attorney General, pursuant to 28 C.F.R. § 15.4.

3   The Attorney General's certification is prima facie evidence that the conduct of the

4   federal employee was in the scope of his or her employment, and is conclusive unless

5   challenged.  Billings v. United States, 57 F.3d 797, 800 (9th Cir. 1995); Green v. Hall,

6   8 F.3d 695, 698 (9th Cir. 1993).  Plaintiff has objected to the submission of this

7   certification (ECF No. 35), and thus bears the burden of disproving the certification by a

8   preponderance of the evidence, 57 F.3d at 800.

9       A scope of employment certification is reviewed de novo.  Pelletier v. Fed. Home

10   Loan Bank, 968 F.2d 865, 875 (9th Cir. 1992) (citing Meridian Int'l Logistics, Inc. v.

11   United States, 939 F.2d 740, 745 (9th Cir. 1991)), cert. denied, 537 U.S. 827 (2002).

12   Faced with a challenge to the scope of employment certification, a district court is

13   authorized but is not required to conduct an evidentiary hearing and resolve disputed

14   factual questions.  Id. at 874 (citing Meridian, 939 F.2d at 745); see also McLachlan v.

15   Bell, 261 F.3d 908, 910-11 (9th Cir. 2001).

16       In conducting a de novo review of a scope of certification, the district court applies

17   the "principles of respondeat superior of the state in which the alleged tort occurred."

18   Pelletier, 968 F.2d at 876 (citations omitted); see also Wilson v. Drake, 87 F.3d 1073,

19   1076 (9th Cir. 1996), cert. denied, 520 U.S. 1142 (1997).  In the present case, California

20   law applies.  Under California law, an employee acts within the course or scope of his

21   employment where: "(1) the act performed was either required by or 'incident to his

22   duties,' or (2) the employee's misconduct could reasonably be foreseen by the employer

23   in any event."  Alma W. v. Oakland Unified Sch. Dist, 123 Cal. App. 3d 133, 139 (1981)

24   (quoting Clark Equip. Co. v. Wheat, 92 Cal. App. 3d 503, 520 (1979)).  A risk is a

25   "foreseeable consequence" of an employer's business if, "in the context of the particular

26   enterprise an employee's conduct is not so unusual or startling that it would seem to

27   include the loss resulting from it among other costs of the employer's business."

28   Farmers Ins. Grp. v. Cnty. of Santa Clara, 11 Cal. 4th 992, 1004 (1995) (internal

1    quotations omitted) (quoting Perez v. Van Groningen & Sons, Inc., 41 Cal. 3d 962, 968
2    (1986)).

3        "California courts have interpreted the respondeat superior doctrine broadly to
4    hold employers vicariously liable for a wide range of their employees' tortious activities.
5    Under California law, so long as an employee's tortious acts arise out of or concern the
6    employment, they may fall within the scope of the employment."  Gaytan v. United
7    States, No. C 05-4621 MHP, 2006 WL 408562, *5 (N.D. Cal. Feb. 17, 2006) (citing
8    Farmers Ins. Grp., 11 Cal. 4th at 1004).  However, if an employee engages in malicious
9    or tortious conduct that "substantially deviates from the employment duties for personal
10   purposes," the conduct falls outside the scope of employment, and the employer is not to
11   be held vicariously liable.  Farmers Ins. Grp., 11 Cal. 4th at 1005 (citations omitted).
12   This rule applies even if: (1) the misconduct occurred at the place of employment during
13   business hours; and (2) the employee was engaged in employment activity either before
14   or subsequent to the misconduct.  Id.

15       Plaintiffs present absolutely no evidence to substantiate their position that
16   Defendant Decker acted outside of the scope of his employment at the time of the
17   incidents out of which Plaintiffs' claims arise.  Plaintiffs cite only to their complaint as
18   evidence to refute the certification.  (See generally ECF No. 35.)  The complaint is not
19   evidence that creates factual questions.  In light of this negligible evidence, Plaintiffs
20   have failed to meet the preponderance of the evidence standard.  Similarly, because
21   Plaintiffs have failed to put forth any evidence calling into question whether Defendant
22   Decker acted within the scope of his employment, the Court declines to hold an
23   evidentiary hearing on the issue.  In short, because the certification is prima facie
24   evidence, and because Plaintiffs have failed to meet the preponderance of the evidence
25   standard, the Court must find that Defendant Decker was acting within the scope of his
26   employment.
27   ///
28   ///

1    Because Defendant Decker was acting within the scope of his federal

2    employment, he is dismissed from the action.  The United States is substituted as the

3    defendant for Plaintiffs' FTCA claims.  28 U.S.C. § 2679(d)(2).

4    However, Defendant Decker correctly points out that the Court has already

5    dismissed Plaintiffs' common law tort claims against the United States with prejudice.

6    (ECF No. 17 at 16, 17.)  Plaintiffs' claims against the United States, with the exception of

7    malicious prosecution, were dismissed as time barred.  (ECF No. 17 at 16.)  Plaintiffs'

8    claim for malicious prosecution against the United States was dismissed because

9    Plaintiffs failed to allege facts adequate to show that the prosecution terminated in

10   Plaintiffs' favor.  (ECF No. 17 at 17).)  The Order dismissing these claims specifically

11   stated that if Plaintiffs did not file an amended complaint within twenty days, the causes

12   of action dismissed by virtue of the Order would be dismissed with prejudice.  (ECF

13   No. 17 at 19.)  Plaintiffs did not file an amended complaint within twenty days of the

14   Court's order.  Instead, Plaintiffs submitted a document specifically informing the Court

15   that they had no further factual allegations to add.  (ECF No. 25 at 1.)  Thus, the United

16   States was dismissed with prejudice from this action on November 6, 2012, twenty days

17   after the Court's memorandum and order issued.

18   Thus, Plaintiffs' claims brought pursuant to the FTCA can be brought neither

19   against Defendant Decker—because he was acting within the scope of his

20   employment—nor against the United States—because the United States has been

21   dismissed with prejudice.  Accordingly, Plaintiffs' FTCA claims are dismissed from this

22   action with prejudice.

23

24   **E.  Requests for Declaratory and Injunctive Relief**

25

26   In each cause of action, Plaintiffs request that the Court enjoin Defendant Decker

27   from retaliating against Plaintiffs for bringing suit and committing an act in retaliation for

28   Plaintiffs' previous attempts to bring justice for the Hmong people in Laos.

1    Plaintiffs seek an affirmative injunction and ask that the Court require Defendants to

2    issue a declaration that Defendants violated Plaintiffs' civil rights, and the Plaintiffs are

3    factually innocent of the criminal charges brought against them.

4         As established above, neither § 1983 nor Bivens affords Plaintiffs relief in the

5    present case.  See supra.  Accordingly, Defendant Decker's motion to dismiss Plaintiffs'

6    requests for declaratory and injunctive relief pursuant to both § 1983 and Bivens is

7    granted.

8         To the extent that Plaintiffs request declaratory and injunctive relief pursuant to

9    the FRCA, these claims also fail.  The FTCA provides federal jurisdiction only for civil

10   claims against the United States "for money damages."  28 U.S.C. § 1346(b)(1).  The

11   FTCA does not provide for injunctive relief.  Id.  Thus, Defendant Decker's motion to

12   dismiss Plaintiffs' claims for declaratory and injunctive relief pursuant to the FTCA is also

13   granted.

14

15        **F.  Leave to Amend**

16

17        A court granting a motion to dismiss a complaint must then decide whether to

18   grant leave to amend.  Leave to amend should be "freely given" where there is no

19   "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

20   to the opposing party by virtue of allowance of the amendment, [or] futility of the

21   amendment . . . ."  Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

22   Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

23   be considered when deciding whether to grant leave to amend).  Not all of these factors

24   merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

25   carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

26   185 (9th Cir. 1987).  Dismissal without leave to amend is proper only if it is clear that "the

27   complaint could not be saved by any amendment."

28   ///

1   Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re

2   Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co.,

3   866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment

4   of the complaint . . . constitutes an exercise in futility . . . .")).

5        In this case, Plaintiffs have submitted a statement that "Plaintiffs do not have

6   further facts to allege, and thus will NOT be filing a First Amended Complaint."  In light of

7   this statement, Plaintiffs have represented to the Court that the complaint cannot be

8   saved by any amendment and that leave to amend would constitute an exercise in

9   futility.  See Intri-Plex Techs., 499 F.3d at 1056.  As such, Plaintiffs will not be given

10  leave to amend.

11

12                              **CONCLUSION**

13

14       Accordingly, IT IS HEREBY ORDERED THAT:

15  1.      Defendant's motion to dismiss Plaintiffs' § 1983 claims (ECF No. 32) is

16          GRANTED WITHOUT LEAVE TO AMEND.

17  2.      Defendant's motion to dismiss Plaintiffs' Bivens claims (ECF No. 32) is

18          GRANTED WITHOUT LEAVE TO AMEND.

19  3.      Defendant's motion to dismiss Plaintiffs' state law tort claims brought

20          pursuant to the FTCA is GRANTED WITHOUT LEAVE TO AMEND.  (ECF

21          No. 32.)  These claims are DISMISSED WITH PREJUDICE against all

22          Defendants.

23  4.      The Clerk of the Court is directed to close the case.

24       IT IS SO ORDERED.

25  DATED:  April 8, 2013

26

27  _____

28  MORRISON C. ENGLAND, JR., CHIEF JUDGE
    UNITED STATES DISTRICT JUDGE